[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14001
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-00038-WLS-TQL-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOWAN A. WHITE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(April 11, 2013)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Towan White appeals his 64-month sentence, imposed after he pled guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 286.  After review, we affirm.

This appeal involves only the calculation of the loss amount under U.S.S.G. § 2B1.1(b) for purposes of determining Defendant White's offense level.  We review the superseding indictment, the presentence investigation report ("PSI") and testimony at the sentencing hearing and then address Defendant White's arguments about relevant conduct and the resulting loss calculation.

## I.  SUPERSEDING INDICTMENT

The superseding indictment ("the indictment") alleged that between June 1, 2004 and November 27, 2006, Defendant White and his codefendants entered into an agreement to defraud the government "by preparing fraudulent federal tax returns using the names and identifying information of others in order to receive refund checks totaling approximately $392,768.00."  The indictment alleged that two of the codefendants, Marvin K. Jones, Sr. and Russell Navarre, were incarcerated in the Georgia Department of Corrections and that the other codefendants lived in various cities in Georgia, including Loganville, Americus, Albany and Plains.  Defendant White was one of the defendants who lived in Americus.

2

The indictment alleged that the object of the conspiracy was "to obtain fraudulent federal tax refunds," and that the "manner and means of the conspiracy" included: (1) "[p]repar[ing] over one hundred and fifty false federal income tax returns using the names and identifying information of prison inmates or persons living in the community"; (2) "[f]orward[ing] employer identity information to Jones, Sr., to be used in the preparation of false W-2 Forms"; (3) "[t]yp[ing] fraudulent W-2 Forms from the library of the prison where Jones Sr. and Navarre were incarcerated"; (4) "[r]eport[ing] false income and taxes withheld on federal income tax returns to the IRS"; (5) "[c]aus[ing] the IRS refund checks to be sent via United States Mail to the addresses of the conspirators or other persons living in the community"; (6) "[using] the IRS automated telephone system to track the issuance of fraudulently obtained refund checks"; (7) "[n]egotiat[ing] or caus[ing] the negotiation of the fraudulently obtained refund checks"; and (8) "[d]ivid[ing] the proceeds among themselves."

The indictment also identified a number of overt acts and listed 48 fraudulent income tax returns the conspirators prepared and filed between June 2004 and August 2006.  The listed tax returns used addresses in Marietta, Albany, Loganville, and Americus, Georgia and totaled $392,768 in refunds.

With respect to Defendant White's specific overt acts, the indictment alleged that: (1) Defendant White gave an unindicted coconspirator at least one

3

fraudulently obtained refund check; (2) the same unindicted coconspirator gave the proceeds of at least 27 cashed refund checks to Defendant White or another codefendant, James Wiley; (3) on July 3, 2006, Defendant White participated in a three-party telephone call with Jones, Sr. and his son, codefendant Marvin Jones, Jr., to discuss making changes to fraudulent tax forms; and (4) on July 11, 2006, Defendant White gave Jones, Jr. a list of companies to be used in preparing false income tax returns.  Defendant White pled guilty to the conspiracy as charged.

## II.  OFFENSE CONDUCT

Undisputed portions of the PSI and Special Agent Brian Slemmon's testimony at the sentencing hearing showed how the tax fraud scheme worked. The IRS and the Georgia Department of Corrections investigated the tax fraud scheme between 2001 and 2006 and focused on Jones, Sr., who was serving a life sentence in a Georgia prison.  While in prison, Jones Sr., oversaw a widespread tax refund scheme in which hundreds of fraudulent returns were filed.  Jones, Sr. recruited Navarre.  In turn, Jones, Sr. and Navarre recruited filers from the prison population and prepared false tax documents in the prison library.

To assist them in the scheme, Jones, Sr. also recruited individuals outside the prison, including Defendant White.  These outside individuals participated in the scheme by: (1) gathering company information to use in preparing false W-2 forms; (2) preparing false tax documents; (3) arranging for the fraudulently

obtained refund checks to be mailed to certain addresses; (4) tracking the issuance of the refund checks through the IRS's automated telephone system; and (5) collecting and cashing the refund checks and dividing the proceeds. Jones, Sr. continued to recruit prison inmates and outside individuals even as he was transferred between numerous state prisons. Some of the fraudulent tax returns the conspirators filed used Atlanta-area addresses and some used Americus addresses.

Defendant White was directly involved in the submission of the Americus tax returns and in the retrieving and negotiating of the refund checks sent to the Americus addresses. For example, on March 8, 2005, a false tax return was filed in Defendant White's own name using an Americus address that was also listed on other false returns connected to the conspiracy. There was no such direct evidence of Defendant White's participation in the Atlanta tax returns or refund checks.

### III.  DISTRICT COURT'S LOSS CALCULATION

The PSI stated that Defendant White joined the conspiracy on April 15, 2002 and was responsible for 328 false tax returns claiming $2,720,605 in fraudulently obtained refunds. Based on this loss amount, the PSI increased Defendant White's base offense level by 18 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(J).

Defendant White objected to the PSI's offense calculation, arguing that it incorrectly assessed his relevant conduct. Defendant White admitted he had provided addresses in Americus to Jones, Sr., removed refund checks from

mailboxes, delivered refund checks to codefendant Wiley, arranged for Wiley to cash refund checks, and received portions of refund check proceeds. Defendant White also admitted that he participated in telephone conversations with Jones, Sr. about preparing false tax returns. Defendant White maintained, however, that he should not be held responsible for all the tax returns, but only those for which he was directly involved in the retrieval or negotiation of the refund checks. Defendant White offered to stipulate to 30 returns, for an intended loss amount of not more than $400,000 and an offense level of 14 under § 2B1.1(b). Defendant White also argued that he should not be held responsible for returns filed as early as April 15, 2002, given that the charged conspiracy did not begin until two years later.

At sentencing, Defendant White reiterated his prior objections and also argued that, for sentencing purposes, the district court should find that there were in fact two conspiracies: one conspiracy involving refunds sent to addresses in the Atlanta area and another conspiracy involving refunds sent to addresses in Americus. Defendant White contended that he was unaware of the refunds sent to Atlanta-area addresses.

The district court found that Defendant White joined the conspiracy on March 8, 2005, the date the false tax return bearing his name was filed, rather than the April 15, 2002 date set out in the PSI. The district court rejected the argument

6

that there were two conspiracies, explaining, "That's simply not what the plea has been in this case and that's not what the evidence would indicate from what the Court has observed" and "simply because . . . some member of the conspiracy might carry out the conspiracy primarily in one area and others in another does not discount the fact that there was a conspiracy." The district court concluded that Defendant White was accountable for all tax returns within the scope of the conspiracy after he joined it, even if he did not personally know about each one of them.

Based on Defendant White's date of entry on March 8, 2005 and the record as to the conspiracy, the district court found that White was responsible for the 124 fraudulent tax returns filed after that date, whether the returns bore an Atlanta or Americus address, for an intended loss amount of $1,004,084. This loss amount resulted in a 16-level increase in Defendant White's offense level under U.S.S.G. § 2B1.1(b)(1)(I).

## IV. DISCUSSION

On appeal, Defendant White raises three arguments challenging the district court's finding that he was responsible for the 124 tax returns filed by the conspirators after March 8, 2005, for a loss amount of $1,004,084. Specifically, White contends that: (1) there was an Atlanta conspiracy and an Americus conspiracy, and White was involved in only the Americus conspiracy; (2) the

record was devoid of evidence that White joined the conspiracy before 2006, when he conceded membership; and (3) the tax refund checks sent to Atlanta-area addresses should not have been included in his relevant conduct.  All of White's arguments lack merit.

The indictment alleged a single, illegal object—to defraud the government by obtaining federal tax refunds—and alleged that the conspirators together assisted in achieving the object by performing a number of interdependent functions.  As alleged, the conspirators collected personal and employer information from people in prison and in the community and forwarded it to Jones, Sr. for use in preparing false W-2 forms and income tax returns; caused the refunds to be sent to particular addresses, tracked the issuance of those refund checks, and then negotiated them and divided the proceeds.  See United States v. Alred, 144 F.3d 1405, 1415 (11th Cir. 1998) ("If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then it is one conspiracy.").  In short, the indictment charged a single conspiracy, and Defendant White's guilty plea constituted a binding admission of the foregoing.  See United States v. Taffe, 36 F.3d 1047, 1049 (11th Cir. 1994) (explaining that by pleading guilty, the defendant "made a legally binding admission" to the facts alleged in the indictment).

8

The district court also did not clearly err in finding that Defendant White joined the conspiracy on March 8, 2005. Special Agent Slemmons testified that a false return was submitted on March 8, 2005, in Defendant White's name and bearing an address that had been listed on other false returns filed by the conspirators. This testimony supports the district court's finding that White was responsible for that tax return and, further, that its filing marked his entry into the charged conspiracy.

Defendant White also has not shown reversible error in the district court's determination under U.S.S.G. § 1B1.3 that his relevant conduct included all 124 tax returns filed after he joined the conspiracy, including those involving Atlanta-area addresses. In a conspiracy case, a defendant's relevant conduct includes not only his own individual acts and omissions, but also all reasonably foreseeable acts and omissions by others in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B). Before holding a defendant responsible for the acts of others, "the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." See United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003) (quotation marks omitted). To this end, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. Id. at 1319-20.

Although Defendant White complains the district court did not adequately make the required findings as to White's involvement in the conspiracy, such a failure "is not grounds for vacating a sentence if the record supports the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant." United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002).  The undisputed facts here demonstrate that the jointly undertaken criminal activity was to file false tax returns using the identities of people both inside and outside of prison.  Defendant White, as someone outside the prison, agreed to participate in the scheme: (1) by gathering information that Jones, Sr. and Navarre, who were inside the prison, could use on false W-2 forms and tax returns; and then (2) by collecting the fraudulently obtained refund checks sent to Americus, negotiating them and dividing the proceeds.  Because the record here supports the district court's relevant conduct finding, no remand is required.

Defendant White alternatively contends that the false tax returns with Atlanta addresses were not reasonably foreseeable to him because he did not know about or directly participate in them.  Given the scope and interdependent nature of the conspiracy, however, White did not have to know about or participate in each individual tax return for it to be reasonably foreseeable to him that some of the false tax returns Jones, Sr. prepared would use addresses from places other than Americus.  See United States v. De La Cruz Suarez, 601 F.3d 1202, 1221 (11th

Cir. 2010) ("If a defendant is aware of the scope of a conspiracy outside of his individual actions, he may be held accountable for actions by co-conspirators even though he was not personally involved.").

**AFFIRMED.**